## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

HRI CLINICS, INC., d/b/a ARBOUR
COUNSELING SERVICES

      Plaintiff,

v.

MARYLOU SUDDERS, in her official
capacity as Secretary of the Massachusetts
Executive Office of Health and Human
Services and in her individual capacity;
DANIEL TSAI, in his official capacity as
Assistant Secretary of the Massachusetts
Executive Office of Health and Human
Services for MassHealth and in his individual
capacity; and JOAN SENATORE, in her
official capacity as Director of MassHealth
Compliance in the Massachusetts Executive
Office of Health and Human Services and in
her individual capacity,

      Defendants.

C.A. No. 18-cv-11890

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

    Plaintiff HRI Clinics, Inc., d/b/a Arbour Counseling Services ("Arbour") alleges as follows:

## INTRODUCTION

    1.    This is a civil action seeking injunctive and declaratory relief and damages against the following officials of the Commonwealth of Massachusetts in their official and individual capacities:  Marylou Sudders, Secretary of the Massachusetts Executive Office of Health and Human Services ("EOHHS"); Daniel Tsai, Assistant Secretary of EOHHS for the Massachusetts Medicaid Program ("MassHealth"); and Joan Senatore, Director of MassHealth Compliance. Relief is sought against all Defendants in connection with their violations of Arbour's rights

under Massachusetts and federal law and its right to due process by unconstitutionally suspending payments to Arbour's Lawrence, Massachusetts clinic ("Arbour Lawrence") for services delivered to patients whose care=' is reimbursed by Medicaid funds from MassHealth directly, or indirectly through managed care entities the Massachusetts Behavioral Health Partnership ("MBHP") and Beacon Health Options ("Beacon").[1]  MBHP and Beacon administer MassHealth benefits to certain MassHealth members pursuant to contracts with MassHealth.  In addition to causing MassHealth to suspend payments to Arbour Lawrence, Defendants caused MBHP and Beacon to suspend payments to the facility.

2.      MassHealth, MBHP, and Beacon, which collectively represent approximately 80% of Arbour Lawrence's revenue, recently summarily suspended reimbursements to Arbour Lawrence based on purported "credible allegations of fraud" for the apparent and sole purpose of advancing the Commonwealth's position in a separate lawsuit that was filed in 2011, *United States ex rel. Escobar v. Universal Health Services, Inc.*, D. Mass., C.A. No. 11-11170 ("*Escobar*").  The three payors issued payment suspensions, for the first time, seven years after that lawsuit was filed and six years after it was unsealed, and did so without providing any sort of pre-suspension hearing; adequately describing the basis for the suspensions; describing the administrative procedures through which Arbour could challenge the suspensions; or specifying how long payments would be suspended.  Arbour can only surmise that the suspensions will endure either indefinitely or until the conclusion of *Escobar*, but in either case that will be too late: Arbour Lawrence will close imminently if the suspensions are not lifted and payments restored, depriving the clinic's more than 1,200 patients of the mental health care they need.

---

[1] Beacon manages MassHealth behavioral health benefits for several managed care organizations ("MCOs"), including Boston Medical Center HealthNet Plan, Neighborhood Health Plan, Fallon Health, and Senior Whole Health MA.

3.      Arbour brings claims under 42 U.S.C. § 1983 for Defendants' violations of Arbour's federal and state due process rights.  Defendants violated such rights by failing to follow applicable regulatory requirements prior to withholding payments, and because the suspensions will result in effective termination of Arbour Lawrence from participation in MassHealth and because there is no post-deprivation remedy available under state law, failing to provide Arbour with a hearing prior to such action.   In the circumstances of this case, where the payment suspensions are entirely pre-textual and will result in the closure of a mental health clinic providing care to over 1,200 patients, due process entitled Arbour to a pre-suspension hearing.  Moreover, Defendants' failure to even follow applicable regulatory requirements – which themselves are procedurally deficient – further compounds their due process violation.

4.      Arbour seeks injunctive and declaratory relief and damages, requiring Defendants to resume paying claims submitted by Arbour Lawrence and to reinstate payment of all claims withheld since the suspensions took effect during the pendency of administrative proceedings, including a pre-suspension hearing, in order to prevent irreparable harm in the form of closure of the clinic.  Arbour also seeks injunctive and declaratory relief requiring Defendants to direct MBHP and Beacon to lift their payment suspensions and provide Arbour with adequate process as required by law and the federal and state Constitutions.

## PARTIES

5.      Plaintiff HRI Clinics, Inc. d/b/a Arbour Counseling Services ("Arbour") provides mental health services throughout the Commonwealth, including at Arbour Lawrence.  It is incorporated in Massachusetts.  Arbour Lawrence is located at 599 Canal Street, Lawrence, Massachusetts.

6.      Each Defendant listed below is sued in their official capacities for equitable relief only as to each and every violation of federal and state rights included in this complaint.  Each

Defendant listed is also sued in their individual capacities for damages with respect only to violations of federal and state rights that have been clearly established. To the extent that federal and state rights have not been clearly established, Defendants are sued in their official capacities only and for equitable relief only.

7.   Defendant Marylou Sudders is the Secretary for EOHHS. MassHealth is a subdivision of EOHHS. Ms. Sudders is being sued in her official capacity for declaratory and injunctive relief, and in her individual capacity for damages associated with clearly established federal and state rights. At all relevant times, Ms. Sudders has acted under color of state law.

8.   Defendant Daniel Tsai serves as EOHHS's Assistant Secretary for MassHealth. Mr. Tsai is being sued in his official capacity for declaratory and injunctive relief, and in his individual capacity for damages associated with clearly established federal and state rights. At all relevant times, Mr. Tsai has acted under color of state law.

9.   Defendant Joan Senatore is the Director of Compliance of MassHealth. Ms. Senatore is being sued in her official capacity for declaratory and injunctive relief, and in her individual capacity for damages associated with clearly established federal and state rights. At all relevant times, Ms. Senatore has acted under color of state law.

## JURISDICTION AND VENUE

10.   This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1367.

11.   This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and is empowered to grant injunctive relief pursuant to Fed. R. Civ. P. 65.

12.   The Court has supplemental jurisdiction to redress harm caused to Arbour by Defendants' violations of 130 C.M.R. § 450.249(C).

13.     Venue is proper based on 28 U.S.C. § 1391(b)(1), (b)(2), and (b)(3) in that the events or omissions giving rise to the claim occurred, and Arbour and Defendants reside, in this District.

## FACTS

### The Massachusetts Medicaid Program and Suspension Authority

14.     MassHealth is the Massachusetts Medicaid program.  Medicaid is a means tested government entitlement program, jointly financed by the federal and state governments, that provides healthcare to low-income individuals.

15.     On information and belief, under MassHealth regulations, all MassHealth members who receive primary health insurance coverage from MassHealth must enroll in either the Primary Care Clinician ("PCC") Plan or an MCO, such as the MCOs managed by Beacon. MassHealth members enrolled in an MCO receive care paid for by that MCO.

16.     On information and belief, each MCO is approved by MassHealth and contracts with MassHealth to provide care to MassHealth members.  Each MCO also has contracts with the medical and behavioral health services providers within its network, and all claims for the services provided to the MCO's MassHealth members are presented to, and paid by, the MCOs. MassHealth pays MCOs capitated payments (a fixed monthly fee) per member, but does not pay directly for care provided to MCOs' MassHealth members.

17.     On information and belief, the PCC Plan administers non-behavioral health care on a fee-for-service basis. However, for behavioral healthcare services, the PCC Plan has contracted with a managed care entity to manage the PCC Plan's behavioral health benefit.  That entity is MBHP.  Similar to MCOs, MBHP receives capitated payments from MassHealth and pays for care provided to PCC Plan enrollees.  MassHealth does not pay directly for mental health care provided to PCC Plan enrollees.

18.     Some MassHealth members receive payment for their mental health services directly from MassHealth.  These are known as "fee-for-service" ("FFS") members.  The vast majority of FFS members are individuals over 65 years old (or otherwise eligible for Medicare).  Many FFS receive 80% of their funding for health care from Medicare, but also meet the income qualifications for MassHealth such that MassHealth acts as the secondary payor for services.  These individuals are also known as "dual-eligible" because they are eligible both for Medicare and Medicaid.

19.     As a condition of receiving federal Medicaid funds, MassHealth must "suspend all Medicaid payments to a provider after the agency determines there is a credible allegation of fraud for which an investigation is pending under the Medicaid program against an individual or entity unless the agency has good cause to not suspend payments or to suspend payment only in part."  42 C.F.R. § 455.23.  MassHealth has promulgated regulations giving it authority to implement such a suspension.  *See* 130 C.M.R. § 450.249.

20.     MBHP and Beacon are required to comply with applicable regulations.  MBHP and Beacon contend that they are required to suspend payment when MassHealth determines there is a credible allegation of fraud.  8/30/18 Letter from Counsel for MBHP and Beacon Ex. 10.

21.     In the face of a suspension, "[a] provider may request, and must be granted, administrative review where State law so requires."  42 C.F.R. § 455.23(a)(3).

22.     A notice of suspension must

> (i) State that payments are being suspended in accordance with [42 C.F.R. § 455.23]; (ii) Set forth the general allegations as to the nature of the suspension action, but need not disclose any specific information concerning an ongoing investigation; (iii) State that the suspension is for a temporary period, as stated in paragraph (c) of [§ 455.23], and cite the circumstances under

6

which the suspension will be terminated; (iv) Specify, when applicable, to which type or types of Medicaid claims or business units of a provider suspension is effective; (v) Inform the provider of the right to submit written evidence for consideration by State Medicaid Agency; [and] (vi) Set forth the applicable State administrative appeals process and corresponding citations to State law.

42 C.F.R. § 455.23(b)(2).

23.     Under federal law, MassHealth should determine that "good cause" exists to lift a payment suspension where the evidence submitted by the target of the suspension demonstrates that the suspension is unnecessary; beneficiary access to care would be jeopardized; or the state Medicaid agency determines that a suspension is not in the best interests of the Medicaid program.  *See* 42 C.F.R. § 455.23(e).

24.     The legitimate purpose of a payment suspension is to curtail *ongoing* fraud.  *See* Medicaid Program; Withholding of Medicaid Payments for Fraud or Willful Misrepresentation, 52 Fed. Reg. 48814 (Dec. 28, 1987) (noting that a payment suspension's purpose is to ameliorate the Medicaid agency's "inability to stop the flow of money" that would "result[] in additional overpayments.").  Where, as here, there is no ongoing regulatory non-compliance, and there was likewise no historical fraud, no legitimate purpose would be served by suspending payments.

## The *Escobar* Action

25.     In 2011, relators Julio Escobar and Carmen Correa ("relators") filed claims under the False Claims Act ("FCA") and the Massachusetts False Claims Act ("MFCA") in the United States District Court for the District of Massachusetts against HRI and affiliated corporations Universal Health Services, Inc. ("UHS") and UHS of Delaware, Inc. ("UHS-DE").  *Escobar*, Case No. 11-11170.  As required by the MFCA, the relators' complaint was served upon counsel for the Commonwealth, the Massachusetts Attorney General (the "AG").  The MFCA also

required relators to serve a disclosure statement on the AG, detailing the facts underlying their allegations.

26.     The allegations in *Escobar* concern whether or not unlicensed clinicians were appropriately supervised when they provided services to Arbour Lawrence patients between 2005 and 2011.  There are no claims in the case that post-date 2011.

27.     MassHealth, MBHP, and Beacon expressly allow unlicensed clinicians to provide care, as long as they are supervised.

28.     MassHealth lists the types of clinicians who may treat MassHealth members.  130 C.M.R. § 429.424.  The clinicians authorized to treat MassHealth members include psychiatrists, psychologists, social workers, nurses, occupational therapists, and "unlicensed counselors."  130 C.M.R. § 424(A)-(F).  Unlicensed clinicians, including social workers, counselors, and psychologists, may deliver services to MassHealth members provided they receive supervision from a licensed clinician.

29.     MBHP and other MCOs have stated in their provider manuals that they will pay for services provided by unlicensed clinicians, but also require that unlicensed clinicians receive supervision from licensed clinicians.

30.     After investigation of the *Escobar* allegations while the complaint was under seal, the United States and the Commonwealth of Massachusetts declined to intervene in the case.

31.     The case was unsealed in 2012, and Defendants were served with the then-operative complaint.

32.     At no time prior to June and July 2018, did MassHealth, MBHP, or Beacon suspend payments to Arbour Lawrence or otherwise take any action with respect to reimbursement of claims submitted by the clinic.  Moreover, neither MassHealth, MBHP, nor

Beacon ever attempted to seek refunds of any previously paid claims. This is true even though the payors believed that supervision violations continued as late as 2015.

33.     After the Court dismissed the case and an appeal to the First Circuit, the Supreme Court of the United States granted certiorari in *Escobar* to evaluate whether the implied certification theory of FCA liability, on which relators rely, is viable and if so, to what extent. The Commonwealth participated in the appeals to the First Circuit and the Supreme Court. The Court held that the theory is viable, but articulated a "demanding" and "rigorous" standard of pleading and proof on the element of materiality under the FCA that focuses on the payment behavior of the payor of the allegedly false claims. Among other things, the Supreme Court held that "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is ***very strong evidence*** that those requirements are not material." *Universal Health Services, Inc. v. Unites States ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016) (emphasis added).

34.     The Commonwealth intervened in the *Escobar* lawsuit in January 2017, after the Supreme Court's decision. However, neither MassHealth nor any other payor suspended payment to Arbour Lawrence at that time.

35.     *Escobar* remains pending on remand in this Court, and no determinations of liability have been made. Arbour believes the relators and the Commonwealth will be unable to prove FCA violations, because there will be a failure of proof on the essential elements of their FCA and MFCA claims. Among other things, Arbour Lawrence did not submit false claims – indeed, there is ample evidence that the relevant clinicians were appropriately supervised in compliance with applicable regulations and guidance during the time period in question. Moreover, plaintiffs will be unable to establish materiality due to the continued payment of

claims by all of the payors over the course of many years (and the lack of any attempt to suspend or recoup payment until June 2018) notwithstanding the payors' knowledge of the alleged violations.

36.     On information and belief, the recent payment suspensions are nothing more than an attempt to shore up the deficiencies in the Commonwealth's and the relators' case on the issue of materiality.

### Arbour Lawrence Complies With Supervision Requirements

37.     Arbour Lawrence is in substantial compliance with relevant supervision requirements applicable to unlicensed personnel.   Arbour Lawrence's supervision policy contains supervision and documentation requirements that exceed the requirements of the MassHealth regulations relating to supervision in the behavioral health context.   *See* 6/22/18 Letter to J. Senatore Ex. 1, at 13 (anticipated ECF pagination) (Policy and Procedure Manual, 2017-2018, Program 20.2, Staff Supervision Ex. a to Affidavit of Michael Gaudet ("Gaudet Aff."), Ex. A).

38.     Arbour Lawrence adheres to this robust supervision policy.  The Clinic Director and other clinicians receive training with respect to the policy.  To ensure compliance, the Clinic Director routinely collects supervision documentation from those clinicians who are providing supervision, in order to ensure it is complete and that supervision has been properly provided. Another level of review also occurs: Michael Gaudet, the Director of Quality Assurance, Corporate Compliance, and Privacy Officer for HRI Clinics, Inc., examines the Clinic's supervision documentation three to four times per year.  If any documentation is missing, he investigates and ensures that corrective action is taken.  *See* Ex. 1, at 10-11 ¶¶ 2-5 (anticipated ECF pagination).  These reviews have demonstrated that Arbour Lawrence has for years been in

substantial compliance with the relevant regulations and with its own supervision policy.  *Id*. at

11 ¶ 6.

39.     MassHealth recently conceded that it had no knowledge of any ongoing

supervision violations at Arbour Lawrence.  *See also* Dep. of MassHealth Ex. 2, at 128:7-128:11

("Q: And I take it that as of today, MassHealth does not have evidence about whether HRI-

Lawrence is currently in compliance with credentialing and supervision requirements; is that

right? A. At this time, no").

### The Summary Payment Suspensions at Issue

40.     On June 6, 2018, Arbour received a letter from Joan Senatore of MassHealth,

stating that MassHealth intended to suspend payments to Arbour Lawrence immediately based

on a purportedly credible allegation of fraud, to wit, that Arbour Lawrence "has provided and/or

continues to provide services through unlicensed and/or unsupervised practitioners."  *See* 6/6/18

Letter from J. Senatore Ex. 3.  No further information about the basis for the suspension was

provided.  The notice required Arbour Lawrence to continue to submit claims (for which it will

not be paid) if it intends to remain a MassHealth provider, notwithstanding the payment

suspension.  The notice stated that any evidence that Arbour may want to submit with respect to

why the suspension should be lifted should be directed to Ms. Senatore's attention.  No further

information was provided about any process through which Arbour could appeal or contest the

suspension, and no opportunity for a hearing or other process was provided.

41.     On June 22, 2018, Arbour responded to Ms. Senatore's letter explaining why the

payment suspension should be lifted: (1) there are no credible allegations of "fraud" to

substantiate the suspension; (2) the suspension is nothing more than a pre-textual attempt to

advance the litigation position of the Commonwealth of Massachusetts in the *Escobar* case that

has been pending for seven years; (3) the suspension does not comply with the federal regulation

authorizing suspension; (4) there are no ongoing supervision violations, a fact which the Clinic would be happy to have MassHealth verify through an audit or other means; and (5) the suspension is directly at odds with the Commonwealth's concerns about access to behavioral health care. *See* Ex. 1.

42.     Prior to receiving any response from Ms. Senatore, Arbour received a letter from Beacon, as manager of several MCOs, stating that the MCOs would be suspending payment effective July 15, 2018.  7/5/18 Letter from Beacon Ex. 4.  Beacon's letter stated:

> MassHealth informed [Beacon] of the credible allegations against [Arbour] Lawrence.  Pursuant to its contract with EOHHS, . . . [Beacon] must suspend payments to providers for whom credible allegations of fraud are outstanding unless [Beacon] can show good cause to make an exception to the suspension either in whole or in part . . . .
>
> Please be advised that Beacon has determined that good cause does not exist for mitigating the suspension of payments to [Arbour] Lawrence for outpatient behavioral health visits.

*Id.*

43.     The purported "credible allegations" are the same as those in MassHealth's letter concerning supervision of unlicensed personnel.  Despite the fact that Beacon is an administrator of government funds, Beacon's letter provided no avenue to contest or appeal the suspension, or even to submit evidence to Beacon concerning the impropriety of the suspension.  Much like MassHealth's letter, Beacon's letter provided that Arbour Lawrence must continue to submit claims without payment if it wishes to continue to participate as a Beacon provider.  *Id.*

44.     Beacon contends it is required to suspend payment when MassHealth determines there is a credible allegation of fraud.  Ex. 10.

45.     Arbour received a virtually identical letter from MBHP dated July 10, 2018. 7/10/18 Letter from MBHP Ex. 5. That letter stated:

> MassHealth informed [MBHP] of the credible allegations against [Arbour] Lawrence. Pursuant to its contract with EOHHS, MBHP must suspend payments to providers for whom credible allegations of fraud are outstanding unless MBHP can show good cause to make an exception to the suspension either in whole or in part.
>
> Please be advised that MBHP has determined good cause does not exist for mitigating the suspension of payments to [Arbour] Lawrence for outpatient behavioral health visits.

*Id.*

46.     Again, the purported "credible allegations" are the same as those in MassHealth's letter concerning supervision of unlicensed personnel. Despite the fact that MBHP is an administrator of government funds, MBHP's letter provided no avenue to contest or appeal the suspension, or even to submit evidence to MBHP concerning the impropriety of the suspension. Much like MassHealth's letter, MBHP's letter provided that Arbour Lawrence must continue to submit claims without payment if it wishes to continue to participate as an MBHP provider. *Id.*

47.     MBHP contends it is required to suspend payment when MassHealth determines there is a credible allegation of fraud. Ex. 10. MassHealth, MBHP, and Beacon have all suspended payments to Arbour Lawrence. Defendants directed and caused MassHealth, MBHP, and Beacon to suspend such payments.

48.     After receipt of the MBHP and Beacon suspension letters, Arbour sent a follow-up letter to Ms. Senatore on July 24, 2018, reiterating that there is no basis for any of the payment suspensions, and informing Ms. Senatore that the suspensions will result in the likely closure of Arbour Lawrence. *See* 7/24/18 Letter to J. Senatore Ex. 6.

49.     Ms. Senatore responded by letter dated July 31, 2018. *See* 7/31/18 Letter from J. Senatore Ex. 7. In that letter, Ms. Senatore stated, without elaboration, that there was not good cause to lift the suspension, and that the suspension would not be lifted "until Legal proceedings

related to the provider's alleged fraud are completed." *Id.*  While Ms. Senatore did not identify the legal proceedings in question, Arbour surmises that she was likely referencing the *Escobar* action.

50.     Arbour also sent letters to MBHP and Beacon on August 2, 2018, objecting to the payment suspensions.  *See* 8/2/18 Letter to MBHP Ex. 8; 8/2/18 Letter to Beacon Ex. 9.  In those letters, Arbour explained that, like the MassHealth suspension, the MBHP and Beacon suspensions violated Arbour's due process rights; there are no credible allegations of "fraud" to substantiate the suspensions; the suspensions are nothing more than a pre-textual attempt to advance the litigation position of the Commonwealth of Massachusetts and the relators in the *Escobar* case that has been pending for seven years; there are no ongoing supervision violations, a fact which Arbour would be happy to have MBHP and Beacon verify through an audit or other means; and the suspension will impede access to behavioral health care for patients in need in Lawrence, Massachusetts, as it will likely result in the Clinic's closure.

51.     On August 30, 2018, counsel for Arbour received a response from counsel for MBHP and Beacon, stating that the suspensions would not be lifted.  Ex. 10.  Among other things, the letter stated:

> After EOHHS determines that a credible allegation of fraud exists, neither MBHP nor the MCOs maintain authority under federal regulation or their contracts to take any action concerning payment suspension other than the actions they are instructed to take by EOHHS.  We note that the federal regulations recognize that good cause may exist to support continued payment in full or in part even when the State identifies credible allegations of fraud.  MBHP or an MCO may recommend continued payment based on good cause.  (In this matter, MBHP and Beacon, on behalf of the MCOs, recommended continuing payments for partial hospitalization services.)  However, neither MBHP nor the MCOs have authority to implement such a decision without ultimate approval and instruction from the State.

*Id.*

14

**The Suspensions Are Contrary to Law and Violate Arbour's Due Process Rights**

52.     The suspensions described above violate the Massachusetts state regulation authorizing suspension of payments, 130 C.M.R. § 450.249(C), because, as discussed further below, the suspensions violate 42 C.F.R. § 455.23, which is incorporated by reference into 130 C.M.R. § 450.249(C).   In addition, the suspensions violate Arbour's rights to procedural due process.

53.     The Notices of Payment Withholding are each deficient under 130 C.M.R. § 450.249(C), which incorporates the requirements of 42 C.F.R.§ 455.23 by reference, in the following respects:

(a)     First, the notices fail to set forth the administrative procedures through which Arbour can challenge or appeal the suspensions.  *See* 42 C.F.R. § 455.23(b)(2)(vi) (providing that the notice must "[s]et forth the applicable State administrative appeals process and corresponding citations to State law").  The MassHealth notice indicates that Arbour may "submit written evidence that [it] would like MassHealth to consider," but does not describe the administrative procedures that Arbour could use to challenge the suspensions if MassHealth deemed the written evidence insufficient to overturn the suspension. Ex. 3; *see* 42 C.F.R. § 455.23(b)(2)(vi).  The MBHP and Beacon notices are even more deficient, in that they do not even provide an opportunity to submit written evidence.

(b)     Second, the notices fail to identify the allegations against Arbour Lawrence.  *See* 42 C.F.R. § 455.23(b)(2)(ii) (providing that the notice must "[s]et forth the general allegations as to the nature of the suspension action").  MassHealth, MBHP, and Beacon have not identified: (1) the clinicians who allegedly were unsupervised; (2) the times in which Arbour Lawrence's clinicians were alleged to be unsupervised; (3) the

15

time period that the allegedly unsupervised care was provided, or (4) how the clinicians were unsupervised.  Without this detail about the nature of the so-called "credible allegations of fraud," Arbour cannot meaningfully respond.

(c)     Third, the notices fail to state with any specificity the duration of the suspensions, or the circumstances under which they will end.  *See* 42 C.F.R. § 455.23(b)(2)(iii) (providing that the notice must "[s]tate that the suspension is for a temporary period . . . and cite the circumstances under which the suspension will be terminated").  The MassHealth notice states only that the suspension will continue until "further notice" or a determination that there is "insufficient evidence of fraud." Ms. Senatore's follow-up letter states the suspension would not be lifted "until Legal proceedings related to the provider's alleged fraud are completed."  Ex. 7.  She provides no further details – to the extent she is referring to the *Escobar* case, that would mean the suspension would remain in effect well into 2019 if not beyond.  The Beacon and MBHP letters are devoid of any information regarding the duration of the suspension.

54.     Furthermore, to the extent the "credible allegations" derive from *Escobar*, the conduct alleged in that case is historical, rather than ongoing, ending in 2011.  The purpose of a payment suspension is to prevent overpayments from being made in the face of ongoing violations.  Where no such violations are occurring, a payment suspension is unnecessary and contrary to the purpose of the regulation.  Arbour Lawrence has explained to MassHealth, MBHP, and Beacon how Arbour Lawrence is currently in compliance with the relevant regulations, and invited them to verify this through an audit or other means.  *See* Exs. 1, 8, and 9. None of the payors have disputed Arbour's explanation.

55.    Furthermore, "good cause" exists supporting a determination not to suspend payments.  The suspensions will jeopardize access to care, by causing the Arbour Lawrence clinic to close.  *See* 42 C.F.R. § 455.23(e)(4).

56.    The Medicaid population in Massachusetts is seriously underserved, particularly with respect to mental health care.  Many MassHealth members needing mental health services go untreated every day.  A recent study of access to behavioral health care in Massachusetts reported that "Massachusetts faces shortages of mental health professionals across the state." Blue Cross Blue Shield Foundation, *Access to Behavioral Health Care in Massachusetts: The Basics*, (July 2017).[2]  More specifically, it found that 45.7% of adults in Massachusetts with any mental health disorder reported not receiving any mental health care, while 59% of Massachusetts youth who experienced a major depressive episode received no mental health services.  *Id.* at 6.  These barriers to access disproportionately affect MassHealth members. Felice Freyer, *Patients Detail Wait for Mental Health Care*, The Boston Globe, Oct. 31, 2017, at B1 ("The wait is especially long for children, those who need a psychiatrist, adults covered by Medicaid, and people who don't speak English.").[3]

57.    Reimbursements from MassHealth, MBHP, and Beacon account for the majority of Arbour Lawrence's revenues.  For example, in 2017, these reimbursements comprised over 80% of the Clinic's revenues.   Arbour Lawrence cannot continue to operate with an

---

[2]available at
https://bluecrossmafoundation.org/sites/default/files/download/publication/BH_basics_Final.pdf
at 15.
[3]A report issued by the Office of the Attorney General in 2015 reached similar conclusions.  *See* Massachusetts Attorney General's Office, *AG Healey Report: Barriers Remain for Patients Seeking Access to Mental Health Care and Substance Abuse Treatment* (June 30, 2015) http://www.mass.gov/ago/news-and-updates/press-releases/2015/2015-06-30-health-care-report.html (last visited Aug. 30, 2018).

approximately 80% loss in revenue, and the suspensions will cause the clinic to close if they are not lifted.

58.     Moreover, the suspension letters require Arbour Lawrence to continue providing services to MassHealth, MBHP, and Beacon members during the period in which payments are suspended.  Requiring Arbour Lawrence to provide services without being paid will hasten its closure.

59.     Arbour Lawrence currently employs 42 individuals in connection with its outpatient program, and services over 1,200 clients in that program.  It typically has a waitlist, which can be as large as 50 patients.  The majority of the patients treated at Arbour Lawrence are MassHealth members.  They rely on the clinic to deliver mental health care.  Because of the shortage of mental health providers available to MassHealth members, putting Arbour Lawrence out of business is not in the best interests of the MassHealth program.  *See* 42 C.F.R. § 455.23(e)(6).

60.     By choking off Arbour Lawrence's right to receive payments for services already rendered and requiring Arbour Lawrence to continue providing services with no expectation of being paid, and doing so without first providing Arbour an adequate notice and a meaningful opportunity to address the purported allegations of fraud, Defendants have violated federal and Massachusetts regulations and Arbour's right to due process.

61.     In addition, because the suspensions will result in the closure of Arbour Lawrence and its termination as a MassHealth provider, the suspensions are, in effect, final agency determinations as to which Arbour is entitled to a hearing.  Accordingly, not only did Defendants violate Arbour's due process rights by failing to abide by their own regulations, they violated its

18

due process rights by failing to provide Arbour with an opportunity for a hearing prior to the suspensions taking effect.

62.     Absent immediate injunctive relief, Arbour Lawrence will be forced to close, depriving its underserved patients of the mental health care they need.  In light of the clinic's imminent closure, there is no adequate post-deprivation remedy under state law.

**COUNT I**

**42 U.S.C. § 1983**

**(Violation of Procedural Due Process/U.S. Const. amend. XIV § 1)**

63.     Arbour realleges, and incorporates by reference, each and every allegation set forth in the paragraphs above.

64.     Arbour's billing privileges and continued participation in the MassHealth program constitute valuable property rights within the meaning of the Fourteenth Amendment to the United States Constitution.  Arbour's unpaid billings for services rendered also constitute valuable property rights within the meaning of the Fourteenth Amendment.

65.     Defendants, acting under color of state law, deprived Arbour of this property interest by suspending and/or causing the suspension of payments to Arbour Lawrence without describing the length of the suspensions, or setting forth the administrative procedures available to challenge the action in violation of 42 C.F.R. § 455.23, causing Arbour considerable and irreparable harm.  Defendants have further deprived Arbour of its property interest by directing MBHP and Beacon to suspend payments, with equally deficient process.

66.     In addition, Defendants have failed to explain the allegations against Arbour Lawrence, which deprives Arbour of any ability to challenge their conclusion as to why a suspension is warranted.

67.     By summarily suspending and/or causing the suspension of payments to Arbour Lawrence and requiring it to continue providing services without compensation, Defendants will cause Arbour Lawrence severe and irreparable harm – including closure of the clinic – long before any administrative process for addressing the suspension.

68.     In addition, the closure of the Arbour Lawrence clinic will effectively terminate Arbour Lawrence's ability to participate in the Massachusetts Medicaid program.

69.     The suspensions are, therefore, not "temporary."  Rather, they are in effect a final agency determination to terminate Arbour Lawrence from participation in MassHealth. Accordingly, due process requires that Arbour be provided an administrative hearing prior to any payment suspension.

70.     Defendants failed to provide any hearing to Arbour with respect to the Arbour Lawrence suspensions, or even to articulate any channels through which Arbour could seek further administrative review of the suspensions.  In this manner, Defendants violated Arbour's due process rights.

71.     There is no adequate post-deprivation remedy available to Arbour under state law, in light of the clinic's certain closure.

72.     Arbour, therefore, respectfully seeks (a) a judgment declaring that the acts, conduct and omissions of Defendants violated the due process clause of the Fourteenth Amendment; (b) immediate injunctive relief requiring Defendants to cause MassHealth to pay Arbour Lawrence's claims during the pendency of constitutionally adequate administrative proceedings, and to direct MBHP and Beacon to likewise lift their suspensions and provide Arbour with the process required by law and the federal and state Constitutions; (c) damages for any payments withheld during the time period of the unconstitutional suspensions; and (d) an

order awarding its reasonable attorneys' fees, expenses and costs pursuant to 42 U.S.C. § 1988 and any other applicable law.

## COUNT II

### Procedural Due Process Under Articles 1, 10, and 12 of the Massachusetts Declaration of Rights

73.     Arbour realleges, and incorporates by reference, each and every allegation set forth in the paragraphs above.

74.     By their policies, practices, acts, or omissions, Defendants violated Arbour's right to due process as guaranteed by Articles 1, 10, and 12 of the Massachusetts Declaration of Rights.

75.     Arbour's billing privileges and continued participation in the MassHealth program constitute valuable property rights within the meaning of Article 10 of the Massachusetts Declaration of Rights.  Arbour Lawrence's unpaid billings for services rendered also constitute valuable property rights within the meaning of Article 10 of the Massachusetts Declaration of Rights.

76.     Defendants, acting under color of state law, deprived Arbour Lawrence of this property interest by suspending and/or causing the suspension of payments to Arbour Lawrence without describing the length of the suspensions, or setting forth the administrative procedures available to challenge the action in violation of 42 C.F.R. § 455.23, causing Arbour considerable and irreparable harm.  Defendants have further deprived Arbour of its property interest by directing MBHP and Beacon to suspend payments, with equally deficient process.

77.     In addition, Defendants have failed to explain the allegations against Arbour Lawrence, which deprives Arbour of any ability to challenge their conclusion as to why a suspension is warranted.

78.     By summarily suspending and/or causing the suspension of payments to Arbour Lawrence and requiring it to continue providing services without compensation, Defendants will cause Arbour Lawrence severe and irreparable harm – including closure of the clinic – long before any administrative process for addressing the suspension.

79.     In addition, the closure of the Arbour Lawrence clinic will effectively terminate Arbour Lawrence's ability to participate in the Massachusetts Medicaid program.

80.     The suspensions are, therefore, not "temporary."  Rather, they are in effect a final agency determination to terminate Arbour Lawrence from participation in MassHealth. Accordingly, due process requires that Arbour be provided an administrative hearing prior to any payment suspension.

81.     Defendants failed to provide any hearing to Arbour, or even to articulate any channels through which Arbour could seek further administrative review of the suspensions.  In this manner, Defendants violated Arbour's due process rights.

82.     There is no adequate post-deprivation remedy available to Arbour under state law, in light of the clinic's closure.

83.     Arbour, therefore, respectfully seeks (a) judgment declaring that the acts, conduct and omissions of Defendants violated the Massachusetts Declaration of Rights; (b) immediate injunctive relief requiring Defendants to cause MassHealth to pay Arbour Lawrence's claims during the pendency of constitutionally adequate administrative proceedings, and to direct MBHP and Beacon to likewise lift their suspensions and provide Arbour with the process required by law and the federal and state Constitutions; (c) damages for any payments withheld during the time period of the unconstitutional suspensions; and (d) an order awarding its

reasonable attorneys' fees, expenses and costs pursuant to 42 U.S.C. § 1988 and any other applicable law.

**COUNT III**

**Equitable Relief for Violation of 130 C.M.R. § 450.249**

84.    Arbour realleges, and incorporates by reference, each and every allegation set forth in the paragraphs above.

85.    MassHealth regulations provide that "[u]pon written notice to the provider, or without notice as provided under 42 CFR 455.23(b), the MassHealth agency may withhold payments to a provider . . . where there is a credible allegation of fraud under 42 CFR 455.23." 130 C.M.R. § 450.249(C).  Massachusetts regulations require that "[t]he notice complies with 42 CFR 455.23." *Id.*

86.    42 C.F.R. § 455.23(b)(2) provides that when suspending a provider because of a "credible allegation of fraud," the notice of payment suspension must "inform the provider of the right to submit written evidence for consideration by the State Medicaid Agency" and "[s]et forth the applicable State administrative appeals process and corresponding citations to State law."  In addition, the notice must "[s]et forth the general allegations as to the nature of the suspension action[.]"  *See* 42 C.F.R. § 455.23(b)(2)(ii).  The notice must also "[s]tate that the suspension is for a temporary period . . . and cite the circumstances under which the suspension will be terminated."  42 C.F.R. § 455.23(b)(2)(iii).

87.    Although MassHealth informed Arbour of the right to submit written evidence, it failed to "set forth the applicable State administrative appeals process" for challenging the agency's determination that a suspension was appropriate.  MBHP and Beacon did not even inform Arbour of any right to submit written evidence in their notices, which were sent at Defendants' direction.

23

88.     Although MassHealth, MBHP, and Beacon stated that Arbour Lawrence "has provided and/or continues to provide services through unlicensed and/or unsupervised practitioners," this statement fails to provide even general allegations as to which Arbour can meaningfully respond.

89.     Although MassHealth stated that the suspension will continue "until MassHealth issues further notice or determines there is insufficient evidence of fraud" and subsequently that the suspensions would continue "until Legal proceedings related to the provider's alleged fraud are completed," these statements fail to provide any meaningful information about how long the suspension will last or provide Arbour with any understanding of under what circumstances the suspension would be terminated.  MBHP and Beacon's notices were devoid of any information about the length of the suspensions.

90.     MassHealth, MBHP, and Beacon have failed to cure the defects contained in their notices.

91.     Defendants have therefore violated the regulations concerning suspension of payment to providers, and are entitled to equitable relief requiring Defendants to abide by the regulations.

92.     Arbour, therefore, respectfully seeks (a) a judgment declaring that the acts, conduct and omissions of Defendants violated 130 C.M.R. § 450.249; (b) immediate injunctive relief requiring Defendants to cause MassHealth to pay Arbour Lawrence's claims during the pendency of constitutionally adequate administrative proceedings, and to direct MBHP and Beacon to likewise lift their suspensions and provide Arbour with the process required by the regulations.

## PRAYER FOR RELIEF

WHEREFORE, Arbour respectfully demands and prays that the Court enter judgment against Defendants as follows:

    a.   A declaration that Defendants' actions, described herein, violated the due process clauses of the Fourteenth Amendment to the United States Constitution and Article 10 of the Massachusetts Declaration of Rights, and also failed to comply with 130 C.M.R. § 450.249;

    b.   A temporary restraining order and a preliminary injunction requiring Defendants to cause MassHealth to lift its payment suspension and to direct MBHP and Beacon to lift their payment suspensions;

    c.   A temporary restraining order and preliminary injunction requiring Defendants to afford Arbour with a process that complies with applicable regulations and state and federal due process requirements, including a hearing prior to any payment suspension taking effect, and requiring them to direct MBHP and Beacon to provide Arbour with constitutionally adequate process;

    d.   Damages, including those incurred by Arbour with respect to payments previously withheld since the suspensions were issued;

    e.   Attorney's fees, expenses and costs; and

    f.   Such other and further relief that the Court determines is just and proper.

Respectfully submitted,

HRI CLINICS, INC.  D/B/A ARBOUR COUNSELING
SERVICES

*By their attorneys*,

/s/ Evan D. Panich
Mark W. Pearlstein (BBO # 542064)
Laura McLane (BBO # 644573)
Evan D. Panich (BBO # 681730)
MCDERMOTT WILL & EMERY LLP
28 State Street
Boston, MA  02109-1775
Email:  mpearlstein@mwe.com
Email:  lmclane@mwe.com
Email:  epanich@mwe.com
Telephone: (617) 535-4000
Dated:  September 4, 2018          Facsimile: (617) 535-3800

## VERIFICATION

I, _Arni Casareale_ am knowledgeable of the facts alleged herein and make this declaration on behalf of plaintiff HRI Clinics, Inc. d/b/a Arbour Counseling Services.  I affirm that the facts alleged in the foregoing complaint are true to the best of my knowledge, based upon my personal knowledge of the facts stated therein and my review of documents and information available to me.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 4, 2018.

**CERTIFICATE OF SERVICE**

I, Evan D. Panich, hereby certify that this document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 4, 2018.

Dated:  September 4, 2018                    /s/ Evan D. Panich_____